2004 OK CIV APP 30

**Leslie Ellen DAVIS, Plaintiff/Appellant,**

v.

**Jimmy Ray DAVIS, Defendant/Appellee.**

No. 97,682.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 5, 2003.

Rehearing Denied Jan. 9, 2004.

Certiorari Denied March 22, 2004.

Philip A. Hurtt, Lisa Connel–Hurtt, Hurtt, Roberts and Hurtt, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Warren W. Henson, III, Oklahoma City, OK, for Defendant/Appellee.

Opinion By BAY MITCHELL, Presiding Judge.

¶ 1 After a trial on the merits, the trial court held the severance package Defendant/Appellee Jimmy Ray Davis (Husband) received upon being laid off by Seagate Technologies was not joint property subject to equitable division in the parties' divorce. Plaintiff/Appellant Leslie Ellen Davis (Wife) appeals. We affirm.

¶ 2 Husband's severance, called a "Special Separation Benefit" (SSB) is valued at $26,418.04 and is the second largest asset of the marital estate. Husband also had a Seagate 401(k) Retirement Plan worth over $33,000, which the trial court divided evenly between the parties.[1] After the parties had separated and filed their petition for divorce but before the decree of divorce issued, Seagate informed Husband it was eliminating his

---

1. Per its terms, the SSB agreement and waiver had no affect on Husband's right to his retirement benefits.

position due to downsizing and offered Husband the SSB. In order to receive any proceeds under the SSB, Husband had to sign a waiver and release of any legal, equitable, or other claims he may have had against Seagate, specifically claims under the Age Discrimination in Employment Act of 1967 and the Worker Adjustment and Retraining Notification Act (WARN Act). Seagate calculated the amount of Husband's SSB based on his twenty-two years of service with the company.

¶ 3 Because Seagate calculated the SSB based on Husband's twenty-two years of service, all of which took place during the marriage, Wife argues the SSB is marital property subject to equitable division. In addition, Wife claims the benefit is not of an income-replacing nature because Husband was permitted to, and did, draw unemployment compensation after his layoff, as permitted by the terms of the SSB agreement and waiver. Husband maintains the SSB is separate property not subject to equitable division because it is a non-vested benefit designed to replace the loss of those funds Husband would have earned had Seagate not terminated his employment. Husband further argues the funds he received were in consideration for his having waived any and all personal legal claims he may have asserted against Seagate as a result of his termination.

¶ 4 The trial court is vested with wide discretion in the division of marital estates, and the lower court's determination will not be disturbed on review unless it is contrary to law or the clear weight of the evidence, or an abuse of discretion is found. *Carpenter v. Carpenter,* 1983 OK 2, ¶ 24, 657 P.2d 646, 651; *see also Randol v. Randol,* 1993 OK CIV APP 41, ¶ 6, 849 P.2d 1118, 1121.

¶ 5 In analyzing the nature of Husband's SSB, we follow the "replacement" approach, which holds if the proceeds in question replace wages earned during the marriage, the proceeds were marital property subject to equitable division. *Christmas v. Christmas,* 1990 OK 16, ¶¶ 6, 10, 787 P.2d 1267, 1268. Under this approach, we classify benefits not based on what they are called, but according to the nature of the assets they replace. *Id.* Indeed, replace-

ment benefits may be in the form of disability plans, retirement pensions, workers' compensation awards, or severance pay. *Id.,* ¶ 5, 787 P.2d at 1268.

¶ 6 For example, in regard to workers' compensation benefits, the Oklahoma Supreme Court has held:

> [a] workers' compensation disability award is marital property only to the extent that it recompenses for the couple's *loss of income during the marriage.* To the extent that it compensates for *loss of post-divorce earnings* by the injured party, it is separate property. *Because a former spouse has no inherent right to the salary earned by his/her former marriage partner after the marriage is terminated,* there is no right to a disability award which is intended to replace future wages.

*Crocker v. Crocker,* 1991 OK 130, ¶ 18, 824 P.2d 1117, 1122 (emphasis added).

¶ 7 A retirement pension, on the other hand, "is a valuable right which has been purchased through joint efforts of the spouses to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage." *Carpenter v. Carpenter,* 1983 OK 2, ¶ 23, 657 P.2d 646, 651. A retirement pension "insures against superannuation, survival beyond retirement age" and functions "as a substitute for life savings." *Christmas,* ¶ 7, 787 P.2d at 1268.

¶ 8 That Husband was not ready to retire at the time Seagate laid him off is not in dispute. Indeed, but for the layoff, all indications are that he would have continued working at Seagate after the trial court entered the parties' divorce decree. It is likewise uncontroverted that during the course of both the marriage and Husband's employment with Seagate, Husband contributed to a 401(k) retirement plan. Proceeds from 401(k) plans are designed to function as life savings for use after retirement. Accordingly, the trial court treated the 401(k) as joint property and divided its value evenly between the parties.

¶ 9 We agree with the trial court that the SSB was not a life savings vehicle pur-

chased through the parties' joint efforts during their marriage. Rather, it is designed to replace future wages Husband would have earned before reaching retirement age and after the divorce had Seagate not laid him off. In addition, the fact that Husband would not have received any proceeds whatsoever under the SSB had he not signed the waiver and release of all legal claims shows Seagate paid the benefit in consideration for Husband's willingness to forgo litigation against the company. The right to sue Seagate for either age discrimination or a violation of the WARN Act was personal to Husband. *See Spann v. Spann,* 1992 OK CIV APP 150, ¶ 7, 852 P.2d 826, 828 (holding personal injury awards are separate property in a dissolution of marriage proceeding). Furthermore, any such litigation would have necessarily occurred after the divorce because the injury itself—the layoff—did not take place until after Wife filed her petition. For all of these reasons, the SSB was Husband's separate property not subject to equitable division as part of the parties' divorce.

¶ 10 Wife's reliance on *Pavatt v. Pavatt,* 1996 OK CIV APP 74, 920 P.2d 1074 and *Kulscar v. Kulscar,* 1995 OK CIV APP 64, 896 P.2d 1206 does not persuade us otherwise. Those cases involved husbands who received SSBs pursuant to federal statute when they voluntarily separated from active reserve duty in the military and transferred to the Individual Ready Reserve (IRR). As a condition of accepting the SSB payment, the men had to serve a minimum of three years in the IRR. 10 U.S.C. § 1174a. If they were later to reenlist in the active reserve and qualify for reserve retirement pay, the military would have recouped the SSB payments from the retirement benefits to which the men would have become entitled. *Id.* In both cases, we affirmed the trial court's finding that the SSB functioned as a retirement plan asset subject to equitable division.

¶ 11 The mere fact that the military retirement plan at issue in those cases is also called an SSB is insufficient to convince us we should treat Husband's SSB as joint property. As mandated by *Christmas,* ¶¶ 6, 10, 787 P.2d at 1268, we classify benefits not based on how they are termed, but according to the nature of the assets they replace. Unlike in *Kulscar* and *Pavatt,* Seagate did not offer Husband the SSB in lieu of his other retirement savings. Rather, it rendered the proceeds to Husband in order to replace wages Husband would have earned after the marriage had Seagate not laid him off, and on the express condition he forgo his right to bring claims against Seagate in a court of law.

¶ 12 The fact that Seagate calculated the amount of the SSB using Husband's years of service does not alter our conclusion. Because long-term employees likely would receive greater damages through court action than short-term employees, Seagate had to make the SSB option more lucrative for employees like Husband. Furthermore, Husband would not have received the SSB proceeds but for the occurrence of two events, neither of which had anything to do with the parties' joint efforts during the marriage: (1) Seagate had to terminate Husband; and (2) Husband had to waive his right to sue Seagate.

 ¶ 13 In addition, Wife offers no case law in support of her claim that Husband's ability to receive unemployment compensation after his layoff means we cannot hold the SSB to be replacement wages. Wife's argument to this effect ignores the fact that unemployment benefits are of limited duration and Husband may not have planned to retire from Seagate for many years to come.

¶ 14 AFFIRMED.

HANSEN, J., and JONES, J., concur.